Marcus C. Christ, J.
This is an action for a declaratory judgment. The plaintiff, a private nonprofit elementary school, seeks a judgment declaring the Building Zone Ordinance of the Incorporated Village of Lawrence unconstitutional insofar as it prevents the plaintiff from constructing and establishing an *551 elementary school on its property situated in a Residence B District. In addition, plaintiff seeks a judgment declaring its right to establish such elementary school on its property and that plaintiff, upon complying with all reasonable regulations for public health and safety, has the right to a building permit and a certificate of occupancy.
The Village of Lawrence is situated in the southwestern corner of Nassau County. It is, as plaintiff asserts, basically a residential community. The village has had a Building Zone Ordinance since 1923. The Building Zone Ordinance of 1923 divided the village into four classes of zoning districts. Three of these were residence zones and the fourth a business zone. Under the 1923 ordinance ‘ ‘ school ’ ’ were permitted as a matter of right in all classes of residence zones and in the business zone as well.
The Zoning Regulation of the Village of Lawrence underwent a general revision in 1931. Ordinance No. 71, adopted October 22, 1931, entitled “Building Zone Ordinance of the Village of Lawrence,” divided the village into seven classes of districts. Six of these were designated residence districts (“Residence A ” to “Residence F,” inclusive) and one class was designated as a business district. Under the scheme of this 1931 ordinance only those uses specifically enumerated were allowed. In Residence A and Residence B Districts the enumerated uses included “public schools, libraries or public museums.” In the remaining Residence Districts and in the Business District, all uses permitted in a Residence A District were allo'wed in such districts. In addition, ‘ ‘ private schools ’ ’ were also specifically enumerated as a permissible use.
A further revision of the Zoning Regulations of the Village of Lawrence occurred with the adoption of Ordinance No. 89 on May 23, 1938. By this amendment the number of Residence Districts was increased from six to eight, the new ones being Residence BB and Residence FF. As so amended, the Zoning Ordinance now permitted ‘ ‘ public schools, libraries or public museums ” in Residence A, BB and B Districts. In the Residence 0 District and all remaining districts, in addition to permitting “ public schools,” the ordinance permitted “ private schools ” when authorized by the Board of Appeals.
In the Zoning Ordinance adopted in 1938 there appeared for the first time a definition of the term “ school.” That term was defined in subdivision (w) of section 10 as “ ah institution of learning, incorporated or unincorporated”. In express terms the ordinance excluded from this definition of a “ school ” numerous types of activities such as summer camps, and insti *552 tutions, organizations, groups or centers whose principal object or one of whose principal objects was physical education, teaching of dancing, singing, dramatics, music, playing of musical instruments, calisthenics, typewriting, stenography, dressmaking, designing, or millinery, or the giving of instruction in beauty parlor operation, business courses, or instruction of a similar nature.
The Code of Ordinance of 1942 (adopted as Ordinance No. 106, May 25, 1942) codified and continued the zoning regulation then in force, renumbered paragraphs, but otherwise made no changes.
The last change in the Zoning Regulations of the village which is material to this action occurred on April 9, 1945 with the adoption of Ordinance No. 108. That ordinance, among other things, amended the Building Zone Ordinance (chapter 1 of part II of the Code of Ordinances of 1942) by repealing subdivisions 3 and 4 of section 211.4. Those subdivisions, prior to their repeal, permitted churches, public schools, libraries and public museums in a Residence A District. The effect of this repeal was to eliminate churches, public schools, libraries and public museums from the enumerated uses permitted in the Residence A District and in the Districts designated Residence BB and Residence B. Ordinance No. 108 further amended the Building Zone Ordinance by deleting from section 211.7 (a) relating to uses permitted in a Residence C Distinct, so much thereof as had previously permitted private schools when authorized by the Board of Appeals, and, as amended, limiting the uses permitted in a Residence C District to those allowed in a Residence A District. Ordinance No. 108 also amended section 211.9 (a) relating to the uses permitted in a Residence E District by adding to the list of permitted uses three new subdivisions as follows:
“ (5) Churches.
“ (6) Public schools, libraries or public museums.
“ (7) Private schools, when authorized by the Board of Appeals, which is hereby granted power to grant permits therefor under such terms and conditions as it may impose for the protection of the property or the occupants thereof whom the Board of Appeals may deem affected by such use.”
Prior to the changes accomplished by this 1945 amendment, churches and public schools had been permitted in all districts as a matter of right and private schools had been permitted by special authorization of the Board of Appeals in a Residence C District and all subsequent districts. After the adoption of the 1945 amendment no churches or schools, public or *553 private, were permitted in the Residence Districts A, BB, B, C and D; churches and public schools (as a matter of right) and. private schools (when authorized by the Board of Appeals), were permitted only in the Residence Districts E, FF and F and the Business District K.
It appears that while there have been additional amendments to the Building Zone Ordinance since 1945, none of such changes relate to the enumeration of permitted uses in a manner material to this action.
Plaintiff acquired its property in the Village of Lawrence in November, 1956. Under the 1923 Zoning Ordinance this property was classified as being in one of the three residence districts (“ Suburban Zone ”). The 1931 revision of the Building Zone Ordinance classified plaintiff’s property as Residence B and that classification has been retained over since. Upon the trial it was stipulated that plaintiff’s property is suitable for residential development.
According to its official map, the Village of Lawrence has a total area of approximately 4% square miles or about 2,900 acres. The table on the said map which sets forth in square feet and acres the area encompassed by each of the zoning districts, shows about 380 acres classified as Residence A. The Residence Districts designated as Residence B, C and D comprise in the aggregate about 515 acres. The districts designated Residence E, F, FF and Business K, the only districts in which a school is permitted, have a combined area of approximately 55 acres. Thus, only .018 of the total area of the village has been zoned so as to permit the use of land for schools. Much of this area in which schools are permitted has been developed and devoted to other permitted uses. Such vacant land as remains in the village is inadequate or unsuitable for the establishment of a school of the type operated by the plaintiff.
Plaintiff’s property, acquired at a cost of $143,000, comprises three parcels of land together forming a single contiguous plot of about 5% acres. This site is located on the northerly side of Broadway, one of the principal traffic arteries in this village. The site has a frontage along the northerly side of Broadway of about 488 feet. This frontage, except for the entrances to two driveways, is screened from Broadway by a private hedge rising 10 feet above street grade. The property is bounded on the east by Frost Lane and is screened on this easterly line by a stockade fence approximately 6 feet high. On the north the plaintiff’s property abuts the Village of Lawrence Parking Plaza No. 3 and the village’s business dis *554 trict. On this north side plaintiff’s property is screened hy a hoard fence ahont 5 feet in height. On the west plaintiff’s property ahnts some of the homes in the residential development known as Heather Lane from which it is screened hy a privet hedge approximately 10 feet high as well as hy thickly planted evergreen shrubbery.
The plaintiff proposes to move from the building where it now conducts its school at 111 Irving Place, Woodmere, New York, to this site in the Village of Lawrence. It is proposed to remodel and utilize the two substantial residences of brick construction now located on the property: A third building
is proposed to he constructed about midway along the Broadway side of the parcel and set hack about 40 feet from such southerly boundary. The two existing buildings, after remodelling,, will contain class rooms. The new building is designed to provide space for a library, music room and a large room which can serve as a synagogue, chapel and assembly room. It is proposed to have limited outdoor activities on the site. Among those contemplated are softball, field hockey and soccer. The younger children would have appropriate playground equipment for their use outdoors. It is estimated that these new facilities will provide accommodations for from 250 to 300 students of elementary school age.
The plaintiff was founded in 1930 hy Rabbi Irving Miller as a day school for secular and Hebrew education. At that time it was called the Jewish Center School of Congregation Shaaray Tefila of Far Rockaway. It began with younger children, gradually adding grades until 1936 when a full elementary school program was offered. The Board of Regents granted a provisional charter on February 14, 1936 incorporating the school under the corporate name of “Jewish Center School of Congregation Shaaray Tefila of Far Rockaway ” to be located in Far Rockaway, Queens County, New York. The provisional charter described such school as “an elementary school including a kindergarten and eight grades, which shall provide for its pupils both secular training and training in the racial and religious culture of Judaism.” The provisional charter stated that it would be replaced by an absolute charter if within five years the corporation acquired resources and equipment available for its use and support and sufficient and suitable for its chartered purposes in the judgment of the Board of Regents, and be maintaining an institution of educational usefulness and character satisfactory to the Board of Regents. An absolute charter was granted the school on March 20, 1942 under the same corporate name and at the same location.
*555 In 1946 Rabbi Miller, tbe school’s founder, was called to Congregation Sons of Israel located in the Village of Woodmere, Nassau County, New York. At that time the “ parent members ” of the corporation, that is, parents or guardians of pupils enrolled in the school who had become members of the corporation, were asked whether they wished to continue affiliation with Congregation Shaaray Tefila in Far Rockaway or to follow Rabbi Miller to Congregation Sons of Israel at 111 Irving Place, Woodmere, Nassau County, New York. The parent group determined to follow Rabbi Miller to Woodmere. On June 20, 1947 the Board of Regents granted an amendment of the school’s charter changing the name of the corporation to “Jewish Center School, Inc.” and changing its location from Far Rockaway in Queens County to Woodmere in Nassau County. In March, 1951, the charter of the school was further amended by changing the name of the school to 1 ‘ The Brandéis School. ’ ’
The corporation is managed by a board of trustees elected by the members of the corporation who are mainly parents or guardians of pupils enrolled in the school. The by-laws of the corporation reveal a close connection between the school and Congregation Sons of Israel, ■ It is shown, for example, by the requirement that at least 50% of the 28 members of the board of trustees of the school shall be members of Congregation Sons of Israel and by the further requirement that of such group at least 50% shall be members of the board of trustees of Congregation Sons of Israel. Further evidence of this close connection is found in the composition of the nominating committee which has the responsibility of presenting a slate of trustees and officers to be elected at the annual meeting. The board of trustees elects a nominating committee of three persons. The chairman of the Board of Congregation Sons of Israel is made an additional member of the nominating committee and designates the seven members of the board of trustees of Congregation Sons of Israel who shall be elected members of the board of trustees of the school. One of the two standing committees provided for in the by-laws is the Board of Education. The Board of Education consists of four members appointed by the president, the president himself and the Rabbi of the congregation who is made the chairman of such Board of Education. It is specifically provided in the by-laws that the religious policy of the school “ shall always conform with the religious policy of the Congregation Sons of Israel, and any act on the part of the Board of Trustees or the Executive Committee that would in any way change or *556 tend to change such policy shall be deemed null and void and of no effect.”
It was explained by Rabbi Miller that the provisions for interlocking trustees were originally placed in the by-laws because the school occupied a building of the Congregation Sons of Israel. According to the testimony of Rabbi Miller, the fact that the school contemplates physically moving from Woodmere to Lawrence will bring no change in the school’s relationship to the Congregation Sons of Israel; Rabbi Miller is to remain as Rabbi of the congregation and chairman of the school’s Board of Education; the religious policy of the school will continue to conform to that of the Congregation Sons of Israel; and that there is no reason to anticipate any change in respect of the interlocking composition of the boards of trustees of the school and the congregation. In this connection it should be noted that in providing for amendments, the by-laws expressly exclude from the amending power such provisions of the by-laws “ as provide for the religious policy of the school and the method — provided for the election of the Board of Trustees.”
The student body of the school consists of 160 children, ranging from 4 through 13 years of age, who attend classes extending from kindergarten through the eighth grade. The school is staffed with 20 teachers of whom 10 teach the usual secular subjects found in elementary schools of the State of New York; 4 teachers give instructions in the special subjects of art, music, speech and physical education; the other 6 give the instruction in the Hebrew program of the school. The students are children of parents belonging to many different Jewish congregations located principally in the so-called ‘ ‘ Five Towns ” area of Nassau County (Cedarhurst, Lawrence, Hewlett, Inwood, Woodmere and vicinity). Only 30 students are children of members of Congregation Sons of Israel. A tabulation entitled ‘ ‘ Distribution of Students of Brandéis School by Geographic Area” discloses that 25% (40) of the entire student body (160) comes from the Village of Lawrence itself. Woodmere, where the school now operates, is represented by 31 students; 15 come from Hewlett; 13 are from Cedarhurst; and 11 come from Far Rockaway which adjoins the Village of Lawrence on the west. The balance of 50 students represents 18 other communities most of which are located in the southwest corner of Nassau County.
The course of study offered in this school is described by the school itself as one offering a “ bicultural program.” That is to say, the program is designed and intended to provide “ elementary education in the secular and Jewish fields, from *557 the nursery through the eighth grade.” On the secular side, the curriculum not only complies with but exceeds the minimum requirements of the New York State Education Department. The evidence established that students, upon completing the course of study at plaintiff’s school, are admitted to both public and private secondary schools without further study or examination. The school’s Hebrew program and its goals are described in the school’s catalog. The school seeks to train its students “ to understand and converse in Hebrew; to read and be able to express oneself in writing; to know the history of the Jewish people and the State of Israel; to have an adequate knowledge of the Bible (Pentateuch and early prophets) in Hebrew and some of its commentaries; and, to become familiar with and be able to participate in the Synagogue, as well as the customs and ceremonies practiced in the home.”
The school day is from 8:30 a.m. to 3:15 p.m. Two hours of each school day are given over to Hebrew instruction, the remainder of the day apart from lunch, is spent in general education and related activities.
The plaintiff school is now being conducted in a building at 111 Irving Place, in the Village of Woodmere. The building is owned by the Congregation Sons of Israel and is made available for the school’s .use without payment of rent or any other payments in lieu of rent. The Congregation Sons of Israel also permits the school to .make use of its Temple which adjoins the building housing the school. The present building lacks space for a separate library and a science room. The school does not have a synagogue and general purpose room of its own. The present quarters are inadequate to serve the needs of the students how enrolled. The present building, both because of its construction and the area of the plot on which it is located, cannot be altered or enlarged to meet the needs of the school. The Congregation Sons of Israel also has need of the building for its own religious educational program. Because of its facilities being inadequate, the plaintiff has not been able to accept many students who wish to attend the school. The property in the Village of Lawrence was purchased after the Board of Trustees had looked for a considerable period of time for a suitable location to which to move the school.
Plaintiff bases its attack on the constitutionality of the Building Zone Ordinance upon several grounds. It is claimed that the ordinance unreasonably excludes plaintiff’s proposed school from a Residence B District and unreasonably restricts the uses to which plaintiff’s property may be put. This, it is alleged, deprives the plaintiff of its property rights without *558 jdue process of law and is a violation of the due process provisions of Federal and State Constitutions. In making this (due process objection, plaintiff argues that the ordinance is : invalid whether the school is regarded as a private school ! providing only a secular education or as a private school (offering both secular and religious education.
The due process objection will be considered first by viewing the plaintiff school as a private school performing the same educational functions as a public school without reference to its status, or lack thereof, as a religious school. The question to be determined is whether the exclusion of a private school from a Residence B District is a valid exercise of the police power. If such exclusion bears a substantial relation to public health, safety,, morals or the general welfare, it may not be successfully challenged on due process grounds. It is plaintiff’s contention that no such substantial relation, in fact, exists.
Plaintiff concedes that the Court of Appeals has not expressly held that private schools may never be excluded from residential areas. Nevertheless, more than once the Court of Appeals (has expressed the view, in connection with private educational ¡institutions whose curriculum meets the requirements of State ¡law, that such educational institutions promote the health, ¡safety, morals and general welfare of the community (cf. Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 195-196; Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 526; Long Is. Univ. v. Tappan, 202 Misc. 956, affd. 281 App. Div. 771, affd. 305 N. Y. 893; see, also, Incorporated Vil. of Lloyd Harbor v. Town of Huntington, 4 N Y 2d 182, 191). When the due process objection is raised it is normally required that the court weigh the harm done by the exercise of the police power against the injury to the community which it is sought to prevent by exercising such power (see Nectow v. Cambridge, U. S. 183). But this docs not appear to be the test applied when churches and schools are involved. Such institutions are (regarded as occupying a status different from other uses. (Cf. Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 523, supra.) Schools, like other places in which people are assembled in large numbers, produce effects such as noise, traffic congestion and attendant hazards to safety. Such conditions may be expected to have a tendency to disrupt the peace and quiet of a residential neighborhood and tend to cause a depreciation of property values. Such effects have been found sufficient basis for excluding buildings other than schools or churches. But such considerations have not been regarded as sufficient to justify exclusion of churches and schools in this *559 State. The possibility of such undeniable effects appears to be considered outweighed by the social values of such institutions. It is true that in Matter of Diocese of Rochester v. Planning Bd., the court indicated (p. 526) that it was not the rule ‘ ‘ that appropriate restrictions may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas.” In view of the fact that the court held that a church or parochial school could not be barred from a residential district because traffic hazards would be increased; or because the enjoyment of neighboring property would be lessened; or because locating a church or school in the area would adversely affect property values, it is hard to bring to mind what ‘ ‘ circumstances ’ ’ could exist in a given situation which would justify denying a church or school the right to locate in a particular residential district. The court cannot agree, therefore, that in denying the right to have, in a Residence B District, a private school whose curriculum meets; the standards of the State Education Department, the village acted to promote the health,, safety, morals or the general welfare of the community.
Some issue has been raised as to whether the plaintiff is a secular school or a school which combines secular and religious schooling for children of the Jewish faith equivalent to the secular and religious training provided by parochial schools for children of the Roman Catholic faith. The court finds on the evidence presented that plaintiff, in addition to providing its students with a secular education which more than meets minimum requirements of the State Education Department, is furnishing simultaneously a religious training for Jewish children which is comparable to that given in parochial schools for Catholic children. The same reasons which the Court of Appeals gave for permitting the establishment of a parochial school in Matter of Diocese of Rochester v. Planning Bd. (supra) apply with equal cogency here. There the court found that the refusal to allow a proposed church and school in a Class A Residential District bore no substantial relation to the health, safety, morals or general welfare. No reasons have been put forward by the defendants in this case to justify exclusion of plaintiff’s school which were not considered in Matter of Diocese of Rochester v. Planning Bd. and rejected. The court concludes, therefore, that in excluding plaintiff school from a Residence B District, the ordinance bears no substantial relation to health, safety, morals or general welfare and thus deprives plaintiff of its property without due process of law.
*560 Constitutional invalidity is also predicated upon the claim that defendant’s zoning ordinance discriminates between public and private schools. On the face of the ordinance, plaintiff concedes there is no discrimination between public and private schools except for the requirement that a private school must obtain permission to operate from the Board of Appeals. Plaintiff does not urge this difference as a ground of invalidity because in the first five residential districts of the village neither public nor private schools are permitted. Discrimination is claimed by the plaintiff to exist in two respects. Prior to 1945 public schools were permitted in a Residence B District. The last public school constructed in the village was the high school which is located in a Residence B District and within one half a mile of the plaintiff’s proposed school site. Plaintiff contends that after the village’s public school needs were met by construction of the high school, the zoning ordinance was amended so as to keep out all private schools. It is urged from this sequence of events that, although ostensibly the amended ordinance treated public schools and private schools alike in banning both from the first five residential districts, in reality it discriminated between public and private schools by excluding the latter when it was no longer necessary to make provision for public schools.
It is further argued that discrimination is found in the zoning pattern of this ordinance because of the rule laid down in Union Free School Dist. v. Village of Hewlett Bay Park (279 App. Div. 618) that a village cannot exclude a public school by means of its Zoning Ordinance. Prom this it is argued that all public schools are exempt from zoning use restrictions. When this principle is coupled with the rule upon which courts have been virtually unanimous, that a Zoning Ordinance cannot forbid the erection of a private school if it permits new public schools in the same area, plaintiff argues that neither public nor private schools can be excluded from residential zones of a village since both types of schools are instrumentalities of the State both performing the same educational function and any undesirable characteristics of one, from a zoning point of view, will be shared by the other. With the law in this condition, plaintiff argues that the Zoning Ordinance here clearly discriminates against the private school.
This court has heretofore expressed the view that in respect of the exercise of the zoning power a distinction can validly be made between public and private schools (Great Neck Community School v. Dick, 140 N. Y. S. 2d 221). Those views were expressed before the Court of Appeals, in Matter of Diocese of *561 Rochester v. Planning Bd. (1 N Y 2d 508, 522, supra) announced its view to the contrary in the following language: ‘ ‘ An ordi-! nance will also be stricken if it attempts to exclude private or parochial schools from any residential area where public schools are permitted While it may well be, as defendant’s counsel has painstakingly shown, that public and private schools have many characteristics which distinguish them from one another organizationally, these differences are not of sufficient importance, in the light of our highest court’s expressed views, to justify different treatment in a zoning ordinance. Therefore, the court finds that the ordinance in question discriminates against private schools.
The complaint alleges that the Zoning Ordinance interferes unreasonably with the guarantee of freedom of religion as provided for by both Federal and State Constitutions. The court finds it unnecessary to pass upon this question inasmuch as the court has sustained the challenge to the ordinance upon other constitutional grounds.
The court finds, for the reasons already stated, that the Building Zone Ordinance insofar as it prevents the plaintiff from constructing and establishing on its property in the Village of Lawrence the elementary school which it proposes to erect thereon is invalid. That the plaintiff has the right to establish such an elementary school on its said property upon complying with all reasonable regulations of the Village of Lawrence, or any other governmental agency, department, bureau or authority having jurisdiction, relating to public health and safety and the establishment and operation of elementary schools. The court, in the exercise of discretion, awards no costs to either plaintiff or defendant.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.