Sol Wachtler, J.
This is a proceeding brought by petitioners pursuant to article 78 of the CPLR.
The petitioner, Board of Cooperative Educational Services of Nassau County (hereinafter referred to as “BOCES ”) is a duly constituted and established! Board of Cooperative Educational Services, organized and existing pursuant to the provisions of section 1958 of article 40 of the Education Law of the State of New York, having been established by order of the Commissioner of Education in October, 1967.
On June 26, 1969, the petitioner, BOCES, designated as lessee, and the petitioner, Dalebass Realty, Inc., (hereinafter referred to as “ Dalebass ”) designated as lessor, entered into an agreement whereby Dalebass was to construct three one-story buildings on certain real property for the express use and occupancy by BOCES. This agreement provided, among other *317 things, that within 30 days from the date thereof, Dalehass would become the owner in fee simple of the demised premises.
The purported lease agreement provides for a five-year term with an option to renew for an additional five years. In addition the agreement provides BOCES with an option to purchase the property and improvements after the expiration of the 10-year term, subject to a referendum of the voters of Nassau County approving such a purchase. The execution of the said agreement by BOCES was approved by resolution of the BOCES board at a special meeting held on June 26,1969.
The subject premises comprise a parcel of land consisting of approximately 4.1 acres located on the north side of Cold Spring Harbor Road in the unincorporated area of the Town of Oyster Bay, Nassau County, New York, and is located in an area designated “B” Residence District pursuant to the Building Zone Ordinance of the town. On June 30, 1969 the petitioner closed title to the said premises and on July 3, 1969 the petitioners BOCES and Dalehass made three applications for permits to build the buildings called for in the agreement between the parties. Subsequently and at the insistence and request of the Building Department of the town, the petitioners did submit, among others, the following documents:
(1) An “Affidavit of Use” by the President of Dalehass, sworn to July 3, 1969 attesting that the three school buildings to be erected on the subject premises were to be used by BOCES, as tenant, “as a regularly organized high school having a curriculum approved by the Board of Regents of the State of New York, to wit, as a school for occupational education having a curriculum approved by the Board of Regents of the State of New York for high school and other students at the high school level ”.
(2) A letter dated June 26,1969 from the Associate Superintendent of BOCES to the Building Department, advising them that BOCES had entered into a lease agreement for the construction of school buildings on the subject premises to be used “ as a school for occupational education, having a curriculum approved by the Board of Regents of the State of New York for high school and other students at the high school level and
(3) A telegram from the Chief of the Bureau of School District Organization of the State Education Department to the Building Department of the town, advising the Building Department, that “the curriculum offered by the Board of Cooperative Educational Services of Nassau County is a Regents-approved program, ’ ’
*318 On July 18, 1969, after submission of various plans and surveys, the three applications for building permits on the subject premises were approved by the Department of Building and Zoning of the Town of Oyster Bay and building permits were issued to BOCES, as permittee, for construction of the three school buildings on the subject premises. Prior thereto and on July 7,1969, the final plans for the three proposed school buildings were approved by the Director of the Division of Educational Facilities Planning of the State Education Department.
Prior to the issuance of the said building permits certain site clearance took place and between the dates of July 18,1969 (the date of issuance of the building permits) and August 4, 1969 the petitioner Dalebass performed certain construction work on the site including the installation of a foundation for one of the buildings to be constructed.
On August 4,1969 the respondent Gaynor, the Director of the Department of Building and Zoning of the town, transmitted a telegram to petitioner BOCES and to the general contractor working for Dalebass, stating that the building permits were suspended pending legal determination of the use of the property and calling for the cessation of all work on the property. On that same date the petitioner BOCES received a hand-delivered letter from the Building Department advising it that the building permits were re-evaluated and, based on an opinion by the Office of the Town Attorney, the same were suspended until certain facts had been adduced and the validity of the said permits subjected to further legal review.
On August 5, 1969 after a meeting between representatives of the petitioners and officials of the town, the petitioners were advised that the building permits had been revoked and that all work was to cease immediately.
Petitioners now seek judgment reversing and annulling the determination of the respondent Gaynor which resulted in the revocation of the building permits previously issued, as well as a permanent injunction enjoining the respondents from interfering with or impeding the construction of the buildings by Dalebass which are intended for use by BOCES.
The respondents oppose this proceeding on several grounds, the most pertinent of which are as follows:
(1) ' That the agreement entered into between BOCES and Dalebass is void, and the BOCES does not have the power to enter into the same.
(2) That what is being attempted by BOCES in contracting for the erection of facilities in a residential area is violative not *319 only of the powers granted to BOOKS but also violative of the Building Zone Ordinance of the Town of Oyster Bay.
(3) That the construction and use of the facilities in question would create a nuisance endangering the health and welfare of the community.
Respondents make much of their contention that the execution of the lease agreement dated June 26, 1969 by BOOBS was ultra vires. Each of their affirmative defenses, either directly or by incorporation of prior allegations, alleges that BOOBS was not ‘ ‘ empowered by law to enter into the [lease with Dalebass],” and therefore the lease is violative of law. .
The court is of the opinion that the respondents may not collaterally attack or question the regularity or validity of the actions taken by BOOBS in entering into the lease agreement with Dalebass. The respondents are the Director of the Department of Building and Zoning of the Town of Oyster Bay and members of the Town Board of that municipality. None of them are members of BOOBS or officers of the State Education Department of the State of New York and accordingly lack the standing before this court as a matter of law to claim that BOOBS’ execution of the lease agreement with Dalebass was ultra vires. (Matter of Board of Coop. Educational Servs. v. Buckley, 15 N Y 2d 971.)
In the same connection respondents contend that the lease, by its very terms, with its options for renewal and purchase, is in fact an agreement to purchase. They further contend that since BOOBS would be barred from entering into such an agreement of purchase without certain statutory prerequisites, that the agreement itself is unauthorized by law. Here again the court does not feel that respondents have the standing to make this collateral attack; however, it is the opinion of this court that the agreement providing for the construction of the buildings by Dalebass on its premises for use by BOOBS was valid.
BOOBS is an educational body corporate established by the Legislature “ for the purpose of carrying out a program of shared educational services in the schools of the supervisory district and for providing instruction in such special subjects as the commissioner may approve ”. (Education Law, § 1958, subd. 1.) It has the status under the Education Law equivalent to an intermediate school district as defined and regulated by title 2 of article 40 of the Education Law.
The Education Law has been enacted in compliance with the direction of the Constitution of the State which imposes upon the Legislature the duty to provide a system of free public education and reserves to the Legislature full power in relation to *320 the ‘‘ maintenance, support or administration” of the system notwithstanding the powers conferred upon local governments by the Constitution. (N. Y. Const., art. XI; art. IX, former § 13, subd. B [1938]; Matter of Board of Educ. v. Wilson, 303 N. Y. 107.)
The Legislature has conferred upon BOCES pursuant to subdivision 4 of section 1958 of the Education Law the “ power and duty”:
“ p. To rent suitable classrooms, offices or buildings in which to maintain and conduct such cooperative educational services and administrative offices for a period not to exceed five years and to equip and furnish such classrooms offices or buildings in a suitable manner for such purposes * * *.
111. When authorized by the qualified voters of the board, to purchase or otherwise acquire buildings, sites or additions thereto, to purchase or otherwise acquire real property for any lawful purpose and to construct buildings thereon ”.
It is the finding of this court that, in compliance with the direction of the Legislature, BOCES on June 26, 1969 did enter into a lease agreement with Dalebass, a private corporation, to rent for a five-year term suitable buildings to be constructed and classrooms therein in which to conduct co-operative educational services as mandated by the Legislature. Plans for the buildings such as Dalebass proposes to build for use by BOCES must be and have been approved by the Commissioner of Education as of July 7,1969, pursuant to sections 408 and 409 of the Education Law.
It is well settled that in the absence of a specific grant of power the respondents and the Town of Oyster Bay could not by any zoning or other regulation prevent the location of a school by BOCES within its borders and thereby frustrate the performance by BOCES of the duty imposed upon it by law. (Union Free School Dist. v. Village of Hewlett Bay Park, 279 App. Div. 618.)
In fact, respondents concede that, if BOCES owned this property, the town could in no way regulate the zoning or withhold the issuance of a building permit; however, they draw a distinction between such ownership and the rights accruing to BOCES pursuant to the terms of its lease. The court draws no such distinction. Since BOCES is empowered to lease property in order to maintain and conduct its educational services pursuant to the Education Law, and subject to the Commissioner’s approval, it follows that such leased property should be similarly exempt from local building and zoning regulations. This would be true whether the facility to be used was in exist *321 ence at the time of the lease or to he created, as in the instant case, for the intended educational use. Of course, should the property cease to he used for the specified educational purpose, the immunity from municipal ordinances would no longer exist and the owner of the property could then he compelled to demolish or substantially alter the structures to comply with the applicable town ordinances.
Even if the court were to adopt the position taken by the respondents and hold that the Zoning Law of the Town of Oyster Bay did apply, it is noted that article IV of the Town of Oyster Bay Building Zone Ordinance provides, in part, that no building shall be erected in a Residence “ B ” zone except for certain specific uses, one of which is “ 5. a regularly organized elementary or high school having a curriculum approved by the' Board of Regents of the State of New York ”. This ordinance is consistent with the laws of this State which recognize the high purpose and moral value of educational institutions both public and private (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508). There is no question but that the BOOES facility is a school as contemplated by this ordinance and as defined by our courts (Incorporated Vil. of Brookville v. Paulgene Realty Corp., 24 Misc 2d 790, affd. 14 AD 2d 675, affd. 11 N Y 2d 672).
Respondents offered no proof in support of their contention that the intended use of the property will bring excessive noise, noxious odors, and fumes to the area. Indeed there is a possibility that since no outdoor programs are involved, the location of the school in a residential district could be less noisy and distracting to neighborhood residents than an ordinary elementary or high school with playground facilities. Even if it were found that excessive noise or noxious ordors would be emitted this would not constitute a legal bar to the erection of the facility (Brandeis School v. Village of Lawrence, 18 Misc 2d 550; Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, supra).
The school in question when completed will offer a fully approved curriculum and provide high school credits to 635 high school students, all of whom reside in the Town of Oyster Bay. It will be part of an educational co-operative organized within Nassau County for the purpose of providing on a shared basis educational services which cannot be effectively operated or properly financed by any single local school district. The positive features of this program have elevated the vocational high school training to the point where it can no longer be considered a stepchild of our educational system.
*322 Accordingly, it is determined that the action of the respondent Gaynor, in revoking the building permits in question, was invalid. The proceeding as against the members of the Town Board, who are improperly made parties hereto, is dismissed.