Joseph A. Suozzi, J.
Defendants Dalebass Realty Inc. and Bass & D ’Alesandro, Inc. (hereinafter referred to as “ Dale-bass ”) and Board of Cooperative Educational Services of Nassau County (hereinafter referred to as “ BOCES ”) move to dismiss the complaint herein pursuant to CPLR 3211 (subd. [a], pars. 3, 5, 7) on the grounds of lack of standing, collateral estoppel and failure to state a cause of action, respectively.
In the first cause of action plaintiffs, who are resident taxpayers and voters of the Town of Oyster Bay, seek a permanent injunction against the town to restrain the issuance of building permits for certain improvements which are the subject of an agreement, the validity of which is challenged in the second cause. The injunction is sought on the ground that the structures would violate the zoning ordinance of the town. The second cause of action challenges the validity of an agreement made between BOCES and Dalebass and charges that the execution of said agreement is illegal and constitutes a “ waste of public funds.”
As to the first cause of action, the holding in Matter of Board of Coop. Educ. Serv. of Nassau County v. Gaynor (60 Misc 2d 316, affd. 33 A D 2d 701, mot. for lv. to app. den. 26 N Y 2d 612) is determinative. The court in that case held that the facilities to be operated by BOCES constituted a school within the ambit of the town’s zoning ordinance, and that the town may not prevent the location of a school within its borders. This court is bound by that determination, and accordingly dismisses the first cause of action. (Cf. Molenaor v. Watson Estates, 265 App. Div. 928.)
As to the .second cause of action, it is undisputed that BOCES contracted with Dalebass to construct three buildings on its property for use by BOCES. BOCES would lease the premises at a “ net annual rental ” of $153,060 for a five-year term, with an cption to renew for an additional five years, and at the expiration -of the 10-year period BOCES had an additional option to purchase the property and buildings for the sum of $100,000, subject to a referendum of the voters approving the purchase as prescribed by law. In .addition to the ‘ ‘ net annual rental ”, BOCES obligated itself to pay an “ additional rental ” consisting of all taxes and assessments levied by any government and any other cost, charge or fee against the property.
Section 1958 of the Education Law permits BOCES to rent buildings ‘ ‘ for a period not to exceed five years ’ ’ (subd. 4, *187 par. p) and to purchase or otherwise acquire buildings only when authorized by the qualified voters (subd. 4, par. t). In this case the qualified voters are the voters of the 56 school districts in the County of Nassau which are the component members of defendant BOCES.
This same issue as to the validity of the lease agreement between BOCES and Dalebass was also raised in the prior proceeding. After a trial the Trial Judge held that the town lacked standing to question the validity of the agreement between BOCES and Dalebass and observed that in his opinion the agreement was valid. On appeal the Appellate Division, in concurring with the Trial Judge as to the town’s standing to question the agreement’s validity, stated that “it [was] unnecessary to decide whether the agreement between petitioners is valid; and we express no opinion on that question.” (Matter of BOCES v. Gaynor, 33 A D 2d supra, p. 702.)
It is well established and agreed that BOCES has no authority to purchase real property absent a public referendum, and that a municipal body should not be permitted “ to accomplish by indirection what they are forbidden to do directly” (Gerzof v. Sweeney, 22 N Y 2d 297, 304). Whether or not the plaintiffs can establish at a trial by competent testimony that the value of the land and the cost of construction have in fact been amortized over the term of the lease in the form of rental, and that the lease agreement is not a bona fide rental arrangement but rather a device to obviate a referendum for the expenditure of more than $2,000,000 cannot be decided on the papers or on this motion. Certainly the economics of the transaction and the discussions during the negotiations would hear examination to determine the intention of the parties as to whether this was a bona fide lease or a constructive sale.
In this court’s opinion a cause of action is stated, and the plaintiffs ought not to be deprived of the opportunity to sustain their burden of proof unless, as the defendants contend, this court is mandated to dismiss this action because the plaintiffs lack the right or standing to pursue it.
In all candor the right of the plaintiffs to maintain this action does present a troublesome and difficult question. Since the action is brought as a taxpayer’s action pursuant to section 51 of the General Municipal Law, the right to pursue it in its present form must he found in that statute. A board of cooperative educational services is designated in the Education Law (§ 1958, subd. 1) as a political subdivision — which is the same designation applicable to trustees and boards of education of various types of school districts (see Education Law, §§ 1601, *188 1701, 2502, subd. 1). Since a board of education is not a municipal corporation within the provisions of section 51 of the General Municipal Law (Schnepel v. Board of Educ. of City of Rochester, 302 N. Y. 94), then neither is a board such as BOOBS here. Whether the exemption of officials of boards of education and boards such as BOOBS from the safeguards provided by section 51 is intentional or an oversight by the Legislature is not now material. Until there is an extension of the statutory right by legislative amendment to section 51 to include boards of education and of co-operative educational services, this court must agree with the defendants that this action cannot be pursued in the form in which it has been commenced.
Apparently the plaintiffs have recognized the weakness of their position and urge that the action should not be dismissed because of improper form, and that the court should make whatever order is required for its proper prosecution.
BOOBS and Dalebass contend that even assuming that the execution of the subject agreement was ultra vires and exceeded the powers granted by the Legislature, the plaintiffs have no greater right than the town, or even a school district which is a component member of BOOBS, to seek a review of any executed or accomplished action of BOOBS. In support of this contention these defendants rely upon the holding of the Court of Appeals in Matter, of Board of Coop. Educ. Services v. Buckley (15 N Y 2d 971), which denied to a town the right to question the action of a Westchester board in acquiring property and upon Board of Educ. v. Board of Coop. Educ. Services (25 A D 2d 864), in which a school district which was a component part of a board of co-operative educational services was denied the “ standing to object to what is apparently an executed ultra vires act”, to wit, the lease-purchase of real property by the board without then existing statutory authority to do so. Sincé the Appellate Division in the prior proceeding dealing with this .same lease has also held that the town has no standing to seek a review of the acts of BOOBS, the defendants presumably rely on that holding as well.
The suggestion by Dalebass that the plaintiffs may seek their remedy from the Commissioner of Education under sections 306 and 310 of the Education Law or from the Attorney-General pursuant to sections 63, 63-b and 63-c of the Executive Law is an unreal and dubious one. It is hardly a reasonable expectation that the Commissioner of Education will now objectively and impartially review a claimed improper practice which has already received his stamp of approval, or that the Attorney- *189 General will concern himself with an alleged illegal action which this court has refused to review.
Since it is unlikely that a member of BOCES will seek a review of an action in which he participated, to agree with the defendants that these plaintiffs have no better standing than the town or a school district is to accord to BOCES an extraordinary, unique and almost absolute immunity from public challenge or judicial review, which is not available to other officials who at least have a measure of the voters’ and taxpayers’ confidence by virtue of election.
Under these circumstances this court is impelled to exercise its power and discretion as liberally as possible to preserve the plaintiffs ’ .standing to pursue this action. Since the cases relied upon by the defendants did not involve taxpayers such as are presently before this court, and the factual situations are distinguishable, this court does not view the holdings in those cases as binding here.
In Matter of Phalen v. Theatrical Protective Union (22 N Y 2d 34, 41) the petitioners had prosecuted the action in an improper form and requested relief to which it was not entitled. The court there stated that this, however, did not “ serve to put them out of court. The improper form in which their action has been brought and their failure to request the appropriate relief is not a bar to their receiving whatever relief they may be entitled to. CPLR, 103 (subd. [c]) provides that once a court has obtained jurisdiction over the parties in a ‘ civil judicial proceeding ’ the proceeding ‘ shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution ’, and CPLR 105 (subd. [d]), which defines ‘ civil judicial proceeding ’, is clearly broad enough to include the instant proceeding, defining a ‘ civil judicial proceeding ’ as a ‘ prosecution, other than a criminal action, of an independent application to a court for relief.’ Similarly, CPLR 3017 (subd. [a]) provides, in part, that a court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded ’ ”.
Although this action cannot be maintained as a taxpayer’s action, this court holds that it may be maintained as an action for declaratory judgment. Such an action is an appropriate one here to determine the issues raised by the plaintiffs and to test the validity of the challenged lease agreement. One of the purposes of declaratory judgment actions is “ the determination of the validity and construction of public acts and the establishment of public duties without protracted periods of *190 uncertainty ”. (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.02.)
As to the matter of injury or threatened injury to one’s personal rights, the court in Matter of Policemen’s Benevolent Assn. of Westchester County v. Board of Trustees of Village of Croton-on-Hudson (21 A D 2d 693, 694) stated that " One who is a citizen, resident and taxpayer has standing to bring an article 78 proceeding such as the one at bar, even though he does not show a personal grievance or a personal interest in the outcome ”. (Citations omitted.)
• To claim that the personal rights of the taxpayers who must share the financial obligation necessitated by BOCES’ acts are not injured or threatened here sufficiently to maintain this action is to assert a legal fiction which should not deny these plaintiffs their day in court in this action. The denial to the taxpayers of their right to pass judgment via a public referendum (which would be required if this is in fact a purchase of land and improvements and not a lease) is, in this court’s view, a sufficient threatened injury to a personal right to warrant maintenance of this action as one for a declaratory judgment.
Rationale and support for this course of action may be found in the forceful dissenting opinion of the Chief Judge of the Court of Appeals in St. Clair v. Yonkers Raceway (13 N Y 2d 72), in which he was joined by two other members of that court. There the court refused to permit a citizen-taxpayer who could not show any direct or personal injury to sue for an allegedly unconstitutional expenditure of State moneys. Judge Fuld declared (p. 79) that “ Neither logic nor policy demands that the judiciary stay its hand and dismiss the action simply because the proceeding happens to be initiated by a vigilant and civic-minded taxpayer f ollowing official inaction. ’ ’ He also stated that " It is self-evident that the denial of standing to a taxpayer will in most instances prevent any challenge to an expenditure of state funds as violative of the Constitution.”
To preclude these plaintiffs from this course is to compel, as Chief Judge Ftjld so aptly stated (p. 81) in the opinion above cited, the “ apathy of the average citizen concerning public affairs [which] has often been decried ’ ’. Such a denial does not square with rights afforded citizen-voter-taxpayers to challenge and review the actions of officials of other governmental units.
Accordingly, the court orders that the second cause of action herein be deemed an action for declaratory judgment, and that the motions to dismiss be and the same are hereby denied as to the second cause of action and granted as to the first cause of action.