Roger T. Cook, J.
Petitioners are Stewart M. Levy, candidate for Mayor of the City of Buffalo, and Albert J. Fitzgibbons, candidate for Associate Judge of the Buffalo City Court. They seek to annul an enactment of the Buffalo Common Council and the incumbent Mayor Stanley M. Makowski which creates a 13th judgeship for the City Court of Buffalo.
They also seek an order restraining the Board of Elections from accepting certificates for the office and restraining the board from placing the office on the ballot for the general election scheduled November 6,1973.
The threshold issue concerning the standing of the petitioners to bring this suit is resolved in their favor. Although there is a long-standing rule that a party challenging a statute or legislative enactment must show he was personally aggrieved or suffered specific damage (St. Clair v. Yonkers Raceway, 13 N Y 2d 72; Matter of Donohue v. Cornelius, 17 N Y 2d 390), generally a local law or ordinance is not so protected. (Semple v. Miller, 38 A D 2d 174; Matter of Policemen’s Benevolent Assn. of Westchester County v. Board of Trustees of Vil. of Croton-on-Hudson, 21 A D 2d 693; Matter of Werfel v. Fitzgerald, 23 A D 2d 306.) (See, also, Matter of Marino v. Town of Ramapo, 68 Misc 2d 44; Matter of Bon-Air Estates v. Building Inspector of Town of Ramapo, 31 A D 2d 502.)
This court also sees wisdom and an enlightened empathy for the concerned citizen in recent decisions which have taken the position that a petitioner has sufficient standing if the issue is of general public interest. (Empire Elec. Contrs. Assn. v. Fabber, 71 Misc 2d 167; Ofenloch v. Gaynor, 66 Misc 2d 185; Matter of General Building Contrs. of N. Y. State v. County of Oneida, 54 Misc 2d 260.) This court does find the main issue of this proceeding to be of general public interest concerning both its necessity and cost. These topics are not factors in this decision, however, and are referred to only because of their bearing on the issue of standing to sue.
The main issue before the court is the power of the Mayor and the Common Council to increase the number of Judges of the City Court of Buffalo.
It is clear that in 1909, at the time of enactment of the Buffalo City Court Act, the Constitution of the State of New York did *630 not provide specifically with respect to the creation and number of City Court Judges.
As to Justices of the Peace, the Constitution of 1894 provided that “ their number and classification may be regulated by law ”. (N. Y. Const. of 1894, art. VI, § 17.) As to other inferior courts, the Constitution provided that ‘ ‘ all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct.” (N. Y. Const. of 1894, art. VI, § 18.)
The Legislature could, therefore, provide for the creation of additional judgeships in the 1909 Buffalo City Court Act. Section 9 of that act (L. 1909, ch. 570, § 9) provided for the certification of the need for an additional Judge by two thirds of the Judges of the City Court followed by creation of the post by ordinance.
On November 7,1961 a new judicial article was adopted by the People of the State of New York, to be effective September 1, 1962. It established “a unified court system for the state” which system “ shall also include the district, town, city and village courts outside the city of New York”. (N. Y. Const., art. VI, § 1, subd. a.)
The language of the new judiciary article provides that ‘ ‘ The number of the judges of each of such * * * city courts # * * shall be prescribed by the legislature.” (N. Y. Const., art. VI, § 17, subd. d.) The language is clear and in keeping with the legislative purpose of a unified court system for the State extending from the Court of Appeals to the lowest court in the State. The responsibility for determining the judicial needs of the State is placed in the Administrative Board of the Judicial Conference. (Judiciary Law, § 212.) The responsibility for the creation of those judgeships clearly is placed in the New York State Legislature. And if the meaning is clear, it is without this court’s power to change it: “We have no power to so extend by a process of construction the plain meaning of the provisions of the Constitution ”. (Matter of Becker v. Boyle, 221 N. Y. 681, 683.) “ A written constitution * * * must control as it is written until it shall be changed by the authority that established it.” (Wright v. Hart, 182 N. Y. 330, 333.) “ When that sovereign will has been clearly expressed, it is the duty of the courts rigidly to enforce it.” (Judd v. Board of Educ. of Union Free School Dist. No. 2 of Town of Hempstead, 278 N. Y. 200, 216, mot. for lv. to rearg. den. 278 N. Y. 712.)
For example, in 1968, the Legislature increased the number of New York City Civil Court judgeships from 95 to 120. (L. 1968, ch. 987, § 14.)
*631 In 1968, the Legislature increased by 20 the number of New York City Criminal judgeships. (L. 1968, ch. 987, § 15.)
In 1969, the Legislature increased the number of Utica City Court judgeships from two to three. (L. 1969, ch. 332, § 2.)
In 1973, the number of the Rochester City Court Bench was reduced from seven to six (L. 1973, ch. 558, § 1); previously, in 1970, the Legislature had increased the number from five to seven (L. 1970, ch. 125, § 7); and in 1968 an additional Judge was added by the Legislature (L. 1968, ch. 946, § 1).
In 1972, the number of the Binghamton Bench was increased from one to two. (L. 1972, ch. 121, § 1.)
In 1968, the number of Yonkers City Court judgeships was increased from three to four. (L. 1968, ch. 946, § 2.)
In view of the explicit statement of intent of article VI of the Constitution of the State of New York, this court is compelled to annul the action of the Common Council and the Mayor of the City of Buffalo which increased to 13 the number of Judges of the City Court of Buffalo.
As part of this decision, the Erie County Board of Elections is enjoined from accepting certificates of nomination of candidates for that judgeship and is further enjoined from placing that office on the ballot for the general election scheduled for November 6, 1973.