Froessel, J.
 

 These appeals bring up for review two related cases. On November 12,1958 ‘ ‘ Wiltwyck School for Boys, Inc. ’ ’
 
 *188
 
 (herein called appellant or Wiltwyck) contracted to purchase about 112 acres of land in an area zoned as residential in Yorktown, Westchester County, New York. By letter dated the same day, Lester A. Perry, building inspector of Yorktown, informed appellant that he did not consider its proposed use an educational one, and in his opinion it was thus not a permitted use in a residential area. On December 17, 1958 counsel for Wiltwyck replied, urging that it was not only a school permitted under the zoning ordinance, but it was also a permitted charitable and eleemosynary institution. Subdivision 7 of section 423 of the ordinance then permitted ‘ ‘ charitable and eleemosynary institutions other than for the insane ” without further qualification. However, on the very day appellant closed title to this property—January 6, 1959 — the zoning ordinance was amended with respect to charitable and eleemosynary institutions, by which amendment Wiltwyck was excluded.
 

 On May 21, 1959 Mr. Perry denied appellant’s application for a permit to erect six dormitory buildings on the property. In denying the permit, Perry stated that appellant’s proposed use was not a permitted main use in a residential district under the town’s zoning ordinance, because it qualified neither as a school nor as a charitable institution. Appellant thereupon brought an article 78 proceeding against Perry in Supreme Court, Westchester County, seeking an order directing him
 
 “
 
 to disregard the ” ordinance, and issue the permit on the ground that the ordinance as applied to appellant was unconstitutional.
 

 Appellant also appealed the building inspector’s determination to the Yorktown Zoning Board of Appeals, of which Mr. Hill was chairman. That appeal was predicated solely on the ground that Perry’s determination that appellant’s proposed use was not a permitted school use was arbitrary. After a public hearing, the zoning board affirmed Perry’s determination. Appellant thereupon brought a second article 78 proceeding in Supreme Court, Westchester County, seeking an order reversing and annulling the board’s decision and a holding that to the extent the zoning ordinance barred the type of institution maintained by appellant it was unconstitutional.
 

 The
 
 Perry
 
 and
 
 Hill
 
 proceedings were ordered to be heard together, without consolidation. The Appellate Division, one
 
 *189
 
 Justice dissenting, affirmed Special Term, which in
 
 Hill
 
 affirmed the zoning board’s determination that Wiltwyck does not conform to a school use permitted in a residential district, and in
 
 Perry
 
 affirmed the building inspector’s denial of the permit, and held that appellant’s proposed use was not permitted under the zoning ordinance, and that the inspector’s interpretation and application of said ordinance was valid as to appellant. The crucial questions presented by these appeals are: Is Wiltwyck School for Boys a school under the Yorktown Zoning Ordinance ? If not, is said ordinance as applied to Wiltwyck constitutional?
 

 Wiltwyck has been located in Esopus, New York, for about 15 years. The buildings on these premises, located 110 miles from New York City, have been condemned by the State Department of Social Welfare, and appellant desires to locate closer to New York City to save the cost of paying for the travel time of many of those who serve it, as well as the travel expense of the children’s parents and relatives. For these reasons appellant contracted to purchase the property in Yorktown.
 

 The area in which the property now involved is located is designated as an “Rl-80 One-family Residence District” by the Yorktown Zoning Ordinance. Among the permitted main uses in an Rl-80 district are “ Churches “ Public, elementary and high schools ”, “Private and parochial elementary and high schools in accordance with the provisions of Section 440.18”, and “Religious, charitable and eleemosynary institutions as defined herein (As Amended January 6, 1959) ”. Section 440.181 provides: “ A parochial or private elementary or high school or college, or seminary, shall be permitted, subject to the following standards, provided that it is a school offering a comprehensive curriculum of study similar to that of a public school. Customary accessory uses to schools or colleges shall also be permitted.”
 

 Wiltwyck is a private, nonprofit corporation, incorporated in 1942 pursuant to the Membership Corporations Law as Wiltwyck School for Boys, Inc. Its original and amended certificates of incorporation were consented to by the Commissioner of Education of the State of New York, pursuant to sections 11 (subd. 2) and 30 of the Membership Corporations Law, and by the State
 
 *190
 
 Board of Social Welfare, pursuant to sections 11 (subd. 1) and 30 of that law. Among its purposes as set forth in its amended certificate of incorporation are:
 

 “ To administer for dependent, neglected, abandoned, destitute, delinquent and emotionally disturbed children, without discrimination as to race or color, a constructive program of moral and spiritual enlightenment, character development, correction of behavior problems, education and training for good citizenship; and as part of the foregoing program; to conduct a home for such children * * *.
 

 “ To aid and assist, and to work, in conjunction and in cooperation with, individuals, groups, corporations, organizations, governments, courts, judges and governmental agencies of all kinds, lawfully engaged in fostering or attaining any of the foregoing purposes.”
 

 Wiltwyck conducts its institution for the care of emotionally disturbed delinquent, dependent or neglected boys, aged 8 to 12 upon admission, who are residents of New York City. Its present annual budget is about $1,000,000, half of which is supplied by charitable gifts and half by New York City, which, in turn, is reimbursed 50% of its contribution by the State.
 

 The Board of Education of the City of New York maintains on appellant’s premises ££ P. S. 615, Manhattan ”, one of “ the schools # * * for delinquents who are committed by the courts to the institutions in which these schools are located”. There are 10 teachers and a teacher in charge, who are paid by the Board of Education. The usual New York City elementary school curriculum is applied. The children attend school classes from 9:0Q a.m. to 3:00 p.m. with an hour for lunch. The school is closed during the usual holidays, as well as during the customary summer vacation period, when the boys remain at Wiltwyck.
 

 Of the 100 boys Wiltwyck usually has in its charge, about half are delinquents referred by the New York City Children’s Court, and the other half are dependent or neglected children referred by the City Department of Social Welfare, When a child is referred to Wiltwyck, his case is ££ screened” by a member of appellant’s admissions staff. If it appears that the child might be suitable for Wiltwyck, a social worker interviews him and his parents, and a psychiatrist sees parents and child
 
 *191
 
 for diagnostic examination. If it is determined that the child is treatable at Wiltwyck, he may be enrolled.
 

 All the boys “ are referred because there is some mal-adjustment in their getting along in society ’ ’, and many need psychiatric care. Almost all of them have been diagnosed by a psychiatrist or psychologist as being emotionally disturbed. By law, however, Wiltwyck is not permitted to care for ‘1 psychotic ” children. Appellant’s present policy is to take only those children «who are not dangerous to themselves or to others. Wiltwyck has a total staff of 113 (excluding the public school teachers) which includes 3 part-time psychiatrists, 3 psychologists, and 34 counselors. Generally it takes from 2% to 3 years to
 
 ‘1
 
 bring the child back to the community as a contributing citizen ’ ’.
 

 There can be no doubt that the evidence showed that Wiltwyck in conjunction with the Board of Education of the City of New York was carrying on its work and functioning for the State in accordance with the purposes set forth in its certificate of incorporation, consented to by the Commissioner of Education and the Department of Social Welfare. In the view we take of these cases, we need only reach the first question presented, i.e., whether Wiltwyck is a school as that term is defined in the Yorktown Zoning Ordinance.
 

 Our State Constitution mandates that the ‘ ‘ legislature shall provide for the maintenance and support of a system of free common schools, wherein
 
 all
 
 the children of this state may be educated ” (N. Y. Const., art. XI, § 1; emphasis supplied). The Legislature has imposed this duty in cities upon local boards of education (Education Law, § 2554). This includes the duty to establish “ schools for physically or mentally handicapped or delinquent children”
 
 (id.,
 
 subds. 9, 18), and such schools may be provided “ outside the territorial limits of the city school district but within the state ’ ’ whenever ‘ ‘ the health or welfare of such children makes such provision necessary or desirable ”
 
 (id.,
 
 subd. 20).
 

 Article 89 of the Education Law provides for the instruction of “mentally handicapped” and “delinquent * * * children ’ ’. Section 4401 of said article 89 defines a ‘ ‘ child with retarded mental development” and a “delinquent child”. Section 4402 mandates the State Education Department to
 
 *192
 

 ‘ ‘
 
 stimulate all
 
 private
 
 and public efforts designed to relieve, care for, cure or educate
 
 *
 
 * * mentally retarded children, and
 
 to coordinate such efforts
 
 with the work and function of
 
 governmental agencies
 
 ” (emphasis supplied). Section 4406, entitled “Special classes for severely retarded children”, authorizes boards of education to maintain classes for such children. Section 4409 provides for instruction of certain emotionally disturbed children. That section as last amended defines an emotionally disturbed child as “a person under twenty-one years of age who has been determined to be emotionally disturbed as a result of an examination made by a qualified psychiatrist and a qualified psychologist * * *.”
 

 The Board of Education of the City of New York, pursuant to the mandate of the Legislature, has established a school with a curriculum of the elementary grades in conjunction with Wiltwyck School for Boys. Since that school has been duly established outside the City of New York, dormitories must necessarily be provided, and under the Yorktown Zoning Ordinance dormitories are “permitted as accessory buildings” (§ 440.185). Thus the New York City school system is providing education for the children at Wiltwyck between the hours of 9:00 a.m. and 3:00 p.m. each weekday and the necessary shelter for them at night. Supplementing this instruction and care, Wiltwyck provides a counseling service from the close of the daily school session until bedtime, as well as in week-end, holiday and vacation periods, in the form of athletic, social, cultural, musical and the normal boarding-school type of activities, plus medical care. Its children engage in competition with neighborhood baseball, basketball and softball “ little leagues ”, give musical performances at Tanglewood Music Circle and Carnegie Hall, attend art exhibits, Shakespearean plays, concerts and dances.
 

 Wiltwyck is, therefore, actually performing functions belonging to the State and with which the State is vitally concerned — education of and related aid to delinquent, neglected and dependent children (N. Y. Const., art. XI, § 1; art. VII, § 8). The second paragraph of said section 8 expressly provides that ‘
 
 ‘
 
 nothing in this constitution contained shall prevent the legislature from providing * * * for the education and support of the blind, the deaf, the dumb, the physically handicapped and juvenile
 
 *193
 
 delinquents as it may deem proper * * * or for the aid, care and support, of neglected and dependent, children * * * through agencies and institutions authorized by the stale hoard of social welfare * * Said State hoard, which approved Wiltwyck’s certificate of incorporation and continues to supervise it, has condemned its buildings at Esopus, and approved its planned new location, where it seeks to conduct its operations in a rural residential community because of the heavy expense to it and parents of New York City children in traveling 110 miles to Esopus.
 

 We are therefore of the opinion — as was Judge Kleinteld below — that in thus operating closely with the New York City Board of Education in a common school enterprise, and in carrying out the educational functions of the State, Wiltwyck School for Boys is a school within the unqualified language of the Yorktown ordinance, and that it was arbitrary and unreasonable to hold otherwise. Insofar as the Board of Education contributes its facilities and resources, it clearly partakes of a public elementary school. Insofar as those facilities are supplemented by Wiltwyck, the joint enterprise meets the definition of sections 440.181 and 440.185 of the ordinance.
 

 Under the mandate of our Constitution, and in accordance with modern concepts of education, our Legislature has wisely and dutifully provided for
 
 special schools
 
 for (among others) orphans (Education Law, art. 81), Indians
 
 (id.,
 
 art. 83), the deaf and' the blind
 
 (id.,
 
 arts. 85, 87), as well as physically and mentally handicapped and delinquent children
 
 (id.,
 
 art. 89). All these are schools despite the fact that the students require special attention, and the last named are not mental hospitals, reformatories or prisons.
 

 We recognize of course that some of Wiltwyck’s children may have been so-called “ bad boys ”, but it is common knowledge that conventional public schools in and out of New York City have suffered from had hoys in the past. However, under section 84 of the Domestic Relations Court Act, no child shall he denominated a criminal by reason of an adjudication by the Children’s Court, nor shall such adjudication be denominated a conviction or constitute any other disqualification. ‘ ‘ The concept of crime and punishment disappears ”
 
 (People
 
 v.
 
 Lewis,
 
 260 N. Y. 171, 176).
 

 
 *194
 
 In
 
 Rogers
 
 v.
 
 Association for Help of Retarded Children
 
 (308 N. Y. 126) an injunction was sought to restrain the use of property as a school for mentally retarded children in a highly residential district; it had been previously used as a home and, as an adjunct, a school for cardiac children, staffed and conducted by the Board of Education of the City of New York and not by the prior owner of the property. Many of the arguments here presented by respondent were made in that case. While the principal question there was whether or not there was a continuance of a nonconforming use, Chief Judge Lewis stated (p. 132): “ In our view it cannot be argued successfully that the care of convalescent children does not include their education, the fact being that the Legislature has ordained their education to be compulsory (see Education Law, art. 65). As to plaintiffs’ claim that the use to which the prior owner put the property had been a convalescent home and not a school, we think the argument disregards both the statutory requirement last cited above, and the strong public policy of the State which favors the education of
 
 all children, ho tv ever handicapped.”
 
 (Emphasis supplied.)
 

 In
 
 Incorporated Vil. of Brookville
 
 v.
 
 Paulgene Realty Corp.
 
 (24 Misc 2d 790, affd. 14 A D 2d 575, affd. 11 N Y 2d 672), involving the operation of a day school by a private school corporation, the court said (p. 792): “In short, the defendant has the three prime requisites which all the experts who testified agree are essential to make up a school: a curriculum, a plant consisting of adequate physical facilities, and a qualified staff to carry into effect its educational objectives.” In
 
 State Bd. of Public Welfare
 
 v.
 
 Myers
 
 (224 Md. 246 [1961]) a 13-year-old Negro boy brought an action for declaratory relief on the ground that the State training school to which he was committed was segregated. The appellants argued that'the training schools for delinquent minors were places of detention, analogous to prisons. The Maryland Court of Appeals agreed with the court below that training schools were part of the public education system of the State, analogous to other public schools which admitted only special groups of problem or handicapped children.
 

 Having concluded that Wiltwyck School for Boys is a school within the language of the Yorktown Zoning Ordinance, and
 
 *195
 
 that the decision of the zoning board to the contrary is arbitrary and unreasonable, we need not reach the constitutional question. Accordingly, in
 
 Hill:
 
 the orders of the Appellate Division and Special Term should be reversed; the determination of the Zoning Board of Appeals of the Town of Yorktown annulled; petitioner’s application granted, and the building inspector of the Town of Yorktown should be directed to issue the permit applied for, upon his approval of the building plans submitted by appellant.
 

 In
 
 Perry:
 
 the orders of the Appellate Division and Special Term should be reversed; and in view of our disposition in
 
 Hill,
 
 the petition and this proceeding should be dismissed for mootness.
 

 Chief Judge Desmond and Judges Dye, Fuld, Burke and Foster concur with Judge Froessel; Judge Van Voorhis dissents and votes to affirm.
 

 In each proceeding: Order reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.