TOWNSHIP COMMITTEE OF THE TOWNSHIP OF DEN-
VILLE, THE GOVERNING BODY OF THE TOWNSHIP OF
DENVILLE, A MUNICIPAL CORPORATION OF THE
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
THE BOARD OF EDUCATION OF THE VOCATIONAL
SCHOOL IN THE COUNTY OF MORRIS, *ETC.*, *ET AL.*,
DEFENDANTS-RESPONDENTS.

TOWNSHIP COMMITTEE OF THE TOWNSHIP OF DEN-
VILLE, THE GOVERNING BODY OF THE TOWNSHIP
OF DENVILLE, A MUNICIPAL CORPORATION OF THE
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
THE BOARD OF EDUCATION OF THE VOCATIONAL
SCHOOL IN THE COUNTY OF MORRIS, *ETC.*, *ET AL.*,
DEFENDANTS-RESPONDENTS.

Argued May 10, 1971—Decided July 23, 1971.

144

*Mr. Theodore E. B. Einhorn* argued the cause for appellant (*Messrs. Stein & Einhorn,* attorneys).

*Mr. John A. Wyckoff* argued the cause for respondents (*Messrs. James, Wyckoff, Vecchio & Thomas,* attorneys).

The opinion of the Court was delivered by

FRANCIS, J. The sole question presented by this appeal is whether the zoning ordinance of the Township of Denville bars the operation of a county vocational school in a district where schools are not permitted uses. The Superior Court, Law Division, held that the prohibition was not applicable to the Morris County Board of Vocational Education and entered summary judgment in favor of the Board. We certified the ensuing appeal on our own motion before it was heard in the Appellate Division.

The Township of Denville is a municipality containing 13.06 square miles in Morris County. A zoning ordinance was adopted in 1964 dividing its land area into 14 use zones, three of which were industrial zones. At that time and until July 15, 1970, institutional uses were permitted as special exceptions in all zones upon approval by the Board of Adjustment. Such uses were defined as:

The use by a non-profit public * * * or quasi-public institution such as a church, school, library, hospital or public utility * * *.

The Morris County Board of Vocational Education was organized on October 7, 1969 and began a study of the need for vocational training in Morris County. In a survey subsequently conducted, over 4,000 students expressed a desire for a vocational training program. The study and survey also revealed a need for about 13 courses to service the requirements of students as well as those of local industry and business. As a result, the Board concluded that establishment of a vocational school facility was imperative. Investigation turned up an adequate and satisfactory building with approximately 20 acres of property located on Route 53 in the I-2 industrial zone of the Township. It is said to be centrally located in the county and readily accessible to many of the existing high schools.

Early in July 1970, the Board entered into a contract, with an escape clause, to purchase the building at an agreed price of $1,100,000 for the purpose of operating a county vocational school therein. The State Board of Education, after finding a need for a county vocational school (*N. J. S. A.* 18A:54-12), approved the project and the building and authorized State funding thereof in the amount of $500,000. The Board of Chosen Freeholders of Morris County approved expenditure of the balance of $600,000. On acquisition, the County Board intended to have vocational training classes for high school students during the day with adults and veterans attending evening classes five nights a week. It

was hoped that apprentice programs would commence on October 1, 1970 with night classes for carpenters and electricians and a course on pollution control. Prior to the time the motion for summary judgment was heard in this action, 85 students had been enrolled in the carpenters and electricians courses and several classes of 25 students each were expected in the pollution control course.

On July 15, 1970, the Township amended the zoning ordinance to prohibit institutional uses, except for public utilities, in the three industrial zones, I-1, I-2 and I-P. These three zones constitute 12.40% of the municipal land area. Institutional uses continued to be authorized as special exceptions in the 11 other zones, representing 87.60% of the Township. This amendment resulted in the proceeding now before us in which the County Board of Vocational Education seeks a judgment declaring that it is not subject to the local zoning ordinance, and therefore that the contemplated school operation is not barred thereby.[1]

On motion for summary judgment, the trial court held in favor of the County Board saying that it is an autonomous county public agency designed and authorized by the Legislature to be superior in authority to the zoning power of a municipality and therefore not subject to an exercise of such power which would thwart establishment of a county vocational school. On this appeal, the Township contends that the decisions of this Court in *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough,* 42 *N. J.* 556 (1964), and on the second appeal in that case after remand, 47 *N. J.* 211 (1966) are dispositive of the matter and require a reversal of the judgment. We agree that the cited cases are controlling.

In *Ho-Ho-Kus,* the Diocese acquired 20 acres in the R-1 residence district of the Borough for the purpose of erecting

---

[1]The original complaint in the case which was filed by the Township sought certain injunctive and other relief against the County Board. The trial court denied such relief and no appeal was taken therefrom.

a parochial regional high school thereon. At the time of purchase, such use was permitted by the zoning ordinance, but soon thereafter an amendment was adopted which barred all schools from the R-1 district. However, both public and private schools through the high school level continued to be authorized in the other three residential districts.

The trial court held that a municipality cannot zone with respect to public schools, and relying on *N. J. S. A.* 40:55–33.1, which banned discrimination in zoning between the type of public and private schools involved, concluded that since the amendment affected only the private schools, it violated the statute. *N. J. S. A.* 40:55–33.1 provides:

> No planning or zoning ordinance heretofore or hereafter enacted by any municipality governing the use of land by, or for, schools shall, by any of its terms or provisions or by any rule or regulation adopted in accordance therewith, discriminate between public and private day schools, not operated for profit, of elementary or high school grade.

In rejecting the trial court's determination, the Chief Justice, speaking for the majority of the Court, said:

> We are unable to accept the trial court's view of the statute. The statute obviously was drawn on the thesis that a municipality may zone as to public schools and upon that premise sought to insure equality of zoning treatment for private schools. A legislator voting for that law could hardly have understood it to mean that thenceforth a private school shall be immune from zoning. That, of course, is the effect of the trial court's treatment of the statute. If the Legislature so intended, it would have said so in such simple terms. It would not ordain that private schools shall be subject to nondiscriminatory zoning in order to say that they shall not be subject to any zoning at all.
>
> If public schools are beyond the local zoning power, then the statute in question is meaningless and a nullity. We cannot, however, say the Legislature erred in assuming the zoning power does apply. No statute expressly exempts public schools from zoning and no judicial decision has found the exemption. Indeed, we heretofore assumed that public schools are subject to zoning [citing cases]. 42 *N. J.* at 559–560.

It may be accepted that the County Board of Vocational Education is a distinct statutory entity designed to operate

essentially independent of the Denville governing body in the matter of vocational education. But such existence, of itself, is not so incompatible with application of local zoning strictures as to require the conclusion that the Legislature intended the location of the school to be within the sole discretion of the Board. We repeat what was said in *Ho-Ho-Kus*, that the Legislature could have placed public vocational schools beyond the zoning power, but it did not do so either expressly or impliedly. 42 *N. J.* at 561; 47 *N. J.* at 220 (concurring opinion).

The County Board argues that *N. J. S. A.* 40:55–33.1 is not applicable in this case and therefore should not be taken as an indication of legislative recognition of the right of a municipality to control location of a vocational school by zoning. The thesis is that such a school is not a "day" school "of elementary or high school grade." In our judgment, however, the statutory language of *N. J. S. A.* 40:55–33.1, fairly construed, includes county vocational schools as defined in *N. J. S. A.* 18A:54–1 *et seq.* Such schools, which obviously are below the college level, may offer instruction in "day, part-time and evening classes." *N. J. S. A.* 18A:54–3. Teachers engaged in vocational education in a city school district may be transferred to a county vocational school upon its establishment, retaining all their tenure and pension rights on being transferred, *N. J. S. A.* 18A:54–11.3; teachers, principals, directors and assistant directors of boards of education of county vocational schools are given all the rights and privileges of teachers, principals, superintendents and assistant superintendents of schools in school districts, *N. J. S. A.* 18A:54–22; *N. J. S. A.* 18A:54–9 and 18A:54–32 recognize that there may be full-time and part-time day vocational schools. Pupils over 14 years of age who study part-time in elementary or high school grades or in public vocational schools may obtain employment certificates to work part-time in approved manufacturing establishments, and the employment is considered part of the pupil's schooling. *N. J. S. A.* 18A:38–36; at-

tendance or "truant" officers may be appointed for county vocational schools, *N. J. S. A.* 18A:38–32; the course of study in every such school must be approved by the commissioner of education, with the advice and consent of the state board of education. *N. J. S. A.* 18A:54–24. In view of the broad educational purpose to be served by vocational schools and their relation to conventional elementary and high schools, it would be an unreasonable construction of *N. J. S. A.* 40:55–33.1 to say that such schools do not qualify as public day schools of elementary or high school grade. See *Yanow v. Seven Oaks Park, Inc.,* 11 *N. J.* 341, 349 (1953); and *cf. Wiltwyck School for Boys, Inc. v. Hill,* 11 *N. Y.* 2d 182, 227 *N. Y. S.* 2d 655, 182 N. E. 2d 268 (1962); *Board of Coop. Ed. Services of Nassau Co. v. Gaynor,* 33 *A. D.* 2d 701, 306 *N. Y. S.* 2d 216 (App. Div. 1969). And we do not believe that authorized attendance of adults at such schools militates against that view. See, *N. J. S. A.* 18A:50–1, 8. Thus the conclusion is warranted that vocational schools are within the coverage of *N. J. S. A.* 40:55–33.1, and since all schools, public and private, are now excluded from the industrial zones, it cannot be said that the amendment to the ordinance visited any discrimination upon the county vocational school.

At any rate, no gain can come to the County Board even if *N. J. S. A.* 40:55–33.1 does not apply to vocational schools. If there were no statute at all dealing specifically with the question whether public schools of whatever character were subject to municipal zoning power, the situation would be controlled by the view expressed in the first *Ho-Ho-Kus* case, that is, that public schools are subject to zoning. *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough, supra,* 42 *N. J.* at 560–561; and see the cases cited therein, *St. Cassian's Catholic Church v. Allen,* 40 *N. J.* 46, 50 (1963); *Andrews v. Ocean Twp. Board of Adjustment,* 30 *N. J.* 245, 252 (1959); *Yanow v. Seven Oaks Park, Inc., supra,* 11 *N. J.* at 349–350.

Under all the circumstances, the trial court's view that the County Board of Vocational Education is not subject to the present zoning restrictions cannot be sustained.

As indicated by the foregoing discussion, the attack on the ordinance was based solely on the alleged lack of municipal authority to exclude a county vocational school from the industrial zones by means of exercise of the zoning power. Our decision is limited to disposition of that issue. There is substantial evidence in the record furnished by informed persons that a pressing public need exists for a vocational school in Morris County; that the building sought to be purchased by the County Board is ideally suited and situated within the county from the standpoint of student access; and that, from the standpoint of acquisition costs, the purchase of the existing structure represents a very considerable saving of public funds over the construction costs of a new building. The County Board suggests that the sole motivating factor for adoption of the exclusionary amendment was a desire on the part of the Township governing body to avoid loss of a tax ratable and to avoid a tax immune facility designed to serve students of the entire county and not those of Denville alone.

We have indicated that a municipality may consider its revenues in planning for a well-balanced community. But we have also said that a school may not be barred from a municipality or from a zone solely because the tax exemption may be burdensome; nor may a variance be denied solely for that reason. Educational institutions, such as public vocational schools, are tax free as a matter of paramount State policy which cannot be thwarted by exclusionary zoning. *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough, supra*, 42 *N. J.* at 565–566. Nor should the fact that a vocational school will serve a regional need rather than solely a municipal need, of itself, support a total or a limited zoning bar. 47 *N. J.* at 217; *Id.* at 223 (concurring opinion). The Township points out that the school has not been excluded entirely but only from the in-

dustrial zones, and that 87.60% of the land area of the municipality is available for its location under the special exception provision of the ordinance. Moreover, on the oral argument before us, the assurance was given that the governing body would not oppose the grant of such exception. However, that matter is not before us in this case and we do not deal with it.

The County Board, of course, remains free to apply for a variance under *N. J. S. A.* 40:55-39 from the bar to establishment of its school in the I-2 zone. In this connection the language of the *Ho-Ho-Kus* opinion is pertinent:

* * * some observations seem appropriate without in any way intimating an opinion as to the outcome of an application. The educational mission of a regional high school is clearly a 'special reason' within the meaning of the statute just cited. *Andrews v. Ocean Twp. Board of Adjustment*, 30 *N. J.* 245 (1959). Hence the question will be whether a sound exercise of discretion requires that the school be permitted. In dealing with that question, the local authorities should consider the State policy favoring such exempt functions and the fact that regional needs must be met somewhere. Unfortunately under present law the tax burden falls upon the single municipality rather than the whole area which is benefited. Yet a variance may not be refused on that account. 47 *N. J.* at 217; *Id.* at 223-224 (concurring opinion).

For the reasons stated the judgment below is reversed and the cause is remanded for proceedings consistent herewith.

HALL, J. (dissenting). I am convinced that the township zoning ordinance cannot bar the use of the property in question for a county vocational school and that the trial court was correct in granting a declaratory judgment to that effect. (While I agree with the strong intimation of the majority opinion that the township could be compelled to grant a use variance for the school, I do not think the county vocational school board should be required to go through the vagaries of that process.)

The context presents a classic case of conflict between a municipality acting parochially and a broader range governmental entity seeking to locate a concededly needed educational facility to serve the entire county.

The property involved goes much beyond the usual situation of vacant land. It is a 20 acre parcel upon which is situated a large modern building originally built by a utility and more recently used by a manufacturing company. It is ideally suited for a vocational school, containing much usable equipment and machinery (which would otherwise have to be purchased) and easily adaptable for educational purposes. The cost is about $1,000,000 less than the amount that would be required to erect and equip a new vocational school, without counting land cost. This sum would have to come from all the taxpayers of the county along with further assistance from state and federal coffers. Construction of a new building would require two years, thereby depriving interested residents of the entire county from vocational education for that period, as against the almost immediate use availability of the existing structure.

From a broad standpoint, the location could hardly be better, for it stands in the center of Morris County (population 383,454). Locally, it is situate in an industrial zone, which is a much more suitable area than a residential district for a vocational school with its accompanying machinery and considerable volume of traffic from students of secondary school age during the day and adult students in the evening, coming from all parts of the county. There is no suggestion that the school activity would exert any deleterious effect on neighboring properties that would require special conditions or buffers. Furthermore, the three industrial zones in Denville Township, comprising 12.40% of its 13 square mile area, do not represent densely settled, urban type manufacturing development. Rather there is little industry now in the zones and it is safe to assume that they were created with the hope that lightning might strike and some tax-wise profitable, campus-type industry of research might lo-

cate therein, as had occurred in neighboring municipalities. (The whole township is not built up, even with residential uses. While a portion might be classed as suburban in density, a considerable area remains practically rural.)

The municipal reaction to the vocational school board's contract of purchase of the property had a very clear and typical purpose. The subsequent zoning ordinance amendment forbade all public and quasi-public institutional uses in industrial zones, except public utilities, while leaving them as special exceptions (permitted uses) in all other zones. As the trial court found, the action was directed toward the vocational school board's proposed use of this property. It had nothing to do with any feeling that such a use does not belong in industrial zones. From what we were told at oral argument by counsel for the township, the primary purpose was unquestionably to keep this property— seemingly one of the largest tax ratables in the township— from becoming tax exempt as a county school. Thus once again the nature of local land use regulation is dictated by inappropriate parochial considerations arising from the state's tax structure. (Although the zoning ordinance amendment is not directly attacked in this case as arbitrary, realistically the issue is substantially the same as if it were, as far as the vocational school use is concerned.)

To turn to the legal context, the total consequence is a fundamental conflict between the local interest of the taxpayers of Denville Township and the broader interest of the taxpayers of the whole county of Morris and, perhaps even more importantly, of that segment of the county population desirous of taking advantage of vocational education not now available. To me, the answer to the conflict has to be found in the field of state policy — primarily, policy to be gleaned from the state statues providing for county vocational institutions and indicating whose general welfare should be deemed paramount. See generally, Feiler, "Metropolitanization and Land-Use Parochialism — Toward a Judicial Attitude," 69 *Mich. L. Rev.* 655, 693–697 (1971)

First, let me say that I do not conceive this case to be at all analogous to or governed by *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough,* 42 *N. J.* 556 (1964), 47 *N. J.* 211 (1966). There the court was concerned with a private regional academic high school — a non-governmental institution — proposed to be constructed in the municipality's finest residential area, and an enigmatic statute (*N. J. S. A.* 40:55–33.1), which proscribed local zoning discrimination between public and non-profit private *day* schools. While, as I said at the time (47 *N. J.* at 219), the decisions were not sufficiently definitive in dealing with land use regulation of non-governmental regional institutions, at least the cases do stand for the proposition that, as a matter of legislative intent demonstrated by the statutory provision, traditional public day schools are subject to the local zoning power (and so are private schools on the same non-discriminatory basis). The principal thesis to support the reasonableness of finding such an intent is found in this passage:

> Here the prospect of discord is quite remote, for the school districts, whether regional or not, share a common interest with the municipalities themselves. Ordinarily there is no reason for a school board and the local governing body to quarrel about zoning matters. Hence, although unquestionably the school board as the State's agent to discharge the State's constitutional duty to provide for a system of free public schools * * * is a distinct entity essentially independent of the local governing body, * * * there is a community of interest which augurs for good relations between them. Of course the Legislature could place the public school beyond the zoning power as it is in some jurisdictions * * * but we see no constitutional command that it do so. (42 *N. J.* at 560–561).

It is obvious that the case before us is a very different one. We are dealing with government on both sides, but on different levels — one entirely local and the other county-wide — and conflict actually exists to the extent that the narrower seeks to bar the broader. It is impossible for me to find that *N. J. S. A.* 40:55–33.1 affords any indication of legislative intent to permit local zoning with respect to a county vocational school. The situation is rather akin to

that in *Hill v. Borough of Collingswood,* 9 *N. J.* 369 (1952); *Town of Bloomfield v. N. J. Highway Authority,* 18 *N. J.* 237 (1955); *Aviation Services, Inc. v. Board of Adjustment of Hanover Township,* 20 *N. J.* 275 (1956); and *Township of Washington, Bergen County v. Village of Ridgewood,* 26 *N. J.* 578 (1958). In each of these cases it was held that the particular governmental activity or project involved was not subject to the zoning ordinance of the municipality in which it was situate. As was said in *Ho-Ho-Kus* (42 *N. J.* at 560) with reference to the last three cases, this result was reached on the rationale that there was the likelihood of a conflict in interest that would defeat or hamper the project if the local zoning power were applicable and that the state policy, indicated by the particular authorizing statute in each case, demonstrated that the Legislature intended that the municipality in which the improvement was to be located should not be able to block it by zoning.

*Hill* involved commercial recreational activities in a county park located in a residential zone of the municipality in which the park was situate. *Bloomfield* concerned service areas of the Garden State Parkway similarly located. *Aviation Services* dealt with a municipal airport authorized by statute to be developed in another municipality and *Washington Township* with a municipal water storage tank, likewise authorized to be located outside the municipality that the facility served. Although the enabling legislation in each case was silent, as here, with respect to the applicability of local zoning ordinances, this court readily found in each instance, from the overall nature and purpose of the project and the comprehensive powers granted by the particular statute to the governmental entity involved (including especially the power of eminent domain), that local zoning regulation would be incongruous and could not be allowed to defeat or hinder effectuation of the broader policy and general welfare underlying the particular project.

To my mind, the same considerations are present in the case of county vocational schools and the result should be the

same. Without reciting in detail the authority and powers granted by the enabling statute, *N. J. S. A.* 18A:54–11, *et seq.,* the legislative scheme is plain to empower the creation of an autonomous body in each county to establish and operate county vocational schools for the benefit of all the people of the county, with full power to "[t]ake and condemn land and other property for school purposes" (*N. J. S. A.* 18A:54–20(b)). As far as state policy and local zoning are concerned, I can see no legal difference between this scheme and a county park.

It seems to me that the result reached by the majority flies in the face of these prior decisions and their rationale, and is a step backward in the resolution of inter-governmental land use regulation conflicts.

I would affirm the judgment of the Law Division.

Justice Mountain joins in this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices HALL and MOUNTAIN—2.