Robert H. CRIST and Jack L. Williams, dba Provo Canyon School, Plaintiffs and Respondents,

v.

J. H. BISHOP, Director of the Utah County Building Inspection Department, et al., Defendants and Appellants.

No. 13357.

Supreme Court of Utah.

March 15, 1974.

---

4. See Pinion v. Pinion, 92 Utah 255, 67 P.2d 265; MacDonald v. MacDonald, 126 Utah 573, 236 P.2d 1066.

Arnold C. Roylance, Utah Co. Atty., Jeril B. Wilson, Asst. Utah Co. Atty., Clair M. Aldrich, of Aldrich & Nelson, Provo, for defendants and appellants.

Dallas H. Young, Jr., Provo, for plaintiffs and respondents.

CROCKETT, Justice:

Defendants seek reversal of a decree of the district court which directed them to honor a permit previously issued authorizing the plaintiffs to establish and operate "The Provo Canyon School" northeast of Provo in Utah County.[1]

Plaintiffs had previously made an abortive attempt to establish a similar school in Mapleton. After the failure of that attempt, they acquired a building and about four acres of the land, which had been used as a country club, to convert into this school. On January 8, 1973, the Utah County Planning Department issued a permit. On January 25, protesting property owners in the area filed an appeal to the Board of Adjustment. Pursuant to notice and hearing thereon the board agreed with the contention of the protestants: that the plaintiffs' institution was not a "school" within the meaning of the county ordinance and ordered the permit revoked. Plaintiffs filed this action in the district court to challenge that order. After a plenary trial, including an inspection of the institution, the court found that it was a "school" and directed the defendants to honor the previously issued permit.

Commendably the parties are in agreement in identifying the issue involved here as: whether the institution known as "The Provo Canyon School" as established and operated by the plaintiffs is a "school" within the meaning of that term as used in the zoning ordinance of Utah County.

The ordinance authorizes in this zone buildings, structures, and uses of land:

. . .

\*   \*   \*   \*   \*   \*

C. Schools, churches, public parks and playgrounds, arboretums, public buildings . . .[2]

The argument of the defendants is that although plaintiffs' establishment has some of the attributes of a "school," it "has an additional and paramount purpose that far transcends school attributes" so that it cannot properly be so characterized, but is in reality a detention and correctional institution. In support of this they point out that plaintiffs' advertising is designed to attract maladjusted boys with mental or emotional problems, who need detention and control in connection with their education and training; that they will take "failing students in a fantasy world," or who are "adversely influenced by drugs," boys with "brain damage," with "schizophrenia symptoms." Plaintiffs' school offers "residential treatment with a therapeutically designed round-the-clock living program" including "medical care," psychiatry," and "professional discipline," along with other aspects of education. It is shown that during past operations the plaintiffs have found it necessary in some instances to use forcible restraints such as chains and manacles on some of the boys and/or keep them in locked rooms to detain them.

■ We agree that it is not the name used that determines the character of an institution, but this is to be ascertained from what it actually consists of and its method of operation. The term "school" is a generic one which has numerous meanings. As a noun, it is used to denote various types of institutions of learning, or

---

1. This case is sequel to Crist v. Mapleton City, 28 Utah 2d 7, 497 P.2d 633, wherein plaintiffs were prevented from establishing and operating this institution as "The Oak Hills School" in Mapleton, Utah County.

2. Utah County Ordinance No. 02.0970.02.

specialized schools within such institutions; and in a broader sense, to symptoms of thought, or of doctrine, philosophy, music or the arts; and also to denote certain groups of fish, or animals, or people; and as a verb in the sense of, to teach, train or control; and also as an adjective to so characterize many of the nouns.[3]

The foregoing is said to show how versatile and various some words can be in their meanings, and to demonstrate the wisdom and the necessity of the rule applicable here: That where there is doubt or uncertainty as to the meaning of terms, they should be analyzed in the light of the total context of the ordinance (or statute or instrument); and also in relation to the purpose, and the background circumstances, in which they are used.[4]

The soundness of this doctrine is illustrated by cases cited and relied on by the defendants themselves. For example, they cite In the Matter of Townsend[5] for the proposition that a special school for nurses was held not to be a "school" as that term is generally used in statutes. The issue arose under a New York law which prohibited the issuance of liquor licenses for locations within 200 feet of a schoolhouse. Inasmuch as it was shown that the age of the nurses was 23 years and over, it was reasoned that this was not the type of school intended to be protected by the statute, but rather elementary and intermediate schools attended by children and youth. Similarly, the case of Granger v. Lorenzen,[6] also relied on by defendants, involved a statutory prohibition of saloons within given distances from "schools." The institution in question was a business college for adults.

In the case of Devereux Foundation[7] the ordinance which permitted buildings for educational and religious uses had a provision specifically excluding cemeteries, hospital, homes, sanitarium, correctional institution or structure or other place for accommodating the insane or other persons mentally deficient, weak or abnormal. The court found that the school in question came within the quoted exclusion, which was a valid exercise of the zoning prerogative.

It will thus be seen that the cases referred to are not in discord, but rather are in harmony, with the idea of looking to the context, the background and the purpose in which the term "school" is used in order to determine the meaning and intent of the ordinance. In accord with that doctrine and more closely analogous to our case is Wiltwyck School, etc. v. Hill.[8] The institution was a special one for the care and instruction of delinquent, neglected and maladjusted boys, who were referred there because of their failure to get along in society, and where many needed special discipline and psychiatric care. A challenge was made similar to that urged here: That it was not a "school" within the meaning of the zoning ordinance. Upon a lucid discussion of the terms: education, training and school, as applying even to the maladjusted, delinquent and mentally handicapped, the court concluded that their education and training came within the meaning of "school" where there was no qualification or limitation upon that term.

Looking at the circumstances shown in our case in the light of what has been said above, we think it was reasonable and proper for the trial court to take the view that the meaning of "schools" as used in the ordinance in question was in the sense it is most commonly used and understood in that locality: institutions for education and training.[9] The requisites of

3. Webster's New International Dictionary, 3d Ed., contains more than two dozen definitions and uses of the term "school."

4. Cf. Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870.

5. 195 N.Y. 214, 88 N.E. 41.

6. 28 S.D. 295, 133 N.W. 259.

7. 351 Pa. 478, 41 A.2d 744.

8. 11 N.Y.2d 182, 227 N.Y.S.2d 655, 182 N.E. 2d 268.

9. See 47 Am.Jur., Schools, Sec. 2, p. 297; and Sec. 220, p. 459; 78 C.J.S. Schools and School Districts Sec. 1, p. 605.

such a school are: some physical facility, teachers, a curriculum for study or training, and students who are the objective thereof.[10] If these requisites are met, the status of the institution is not changed because of variation in methods of teaching or of training, or of discipline or control. These are all present in greater or lesser degree in practically all schools; and they may vary greatly without preventing one from being properly so characterized.

■ In regard to the point upon which the defendants place special emphasis: that because of elements of forcible restraint and severe methods of discipline, this is in reality a detention and correctional institution: there is this very significant difference: the boys are sent to this school by a voluntary choice of their parents; and they can similarly be withdrawn. There is not, nor can there be, any absolute right of detention in the sense there is in public penal or correctional institutions.

Consistent with what has been said, it is our opinion that the trial court was justified in concluding that the plaintiffs' institution is a "school" within the meaning of that term as used in the zoning ordinance of Utah County, and in ordering defendants to honor the permit heretofore issued.

Affirmed. No costs awarded.

CALLISTER, C. J., and ELLETT and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

Appeal from a judgment directing the zoning authority to grant a permit to allow a "school" for boys,—described in a predecessor decision of ours, of similar import,[1] as a "detention place" for 26 wayward boys, including drug addicts from ages 12 through 17, and to afford them such training and "schooling" as "would be proper,"—basing our decision apparently on a technical procedural rule, but obviously because the people of Mapleton did not feel safe to have a "school," as we said, inhabited by wayward boys,—drug addicts and otherwise.

The main opinion completely has ignored private property rights. It says, in effect, that you may put a "school" for incorrigibles or those having violent or homicidal tendencies next door to an erstwhile law-abiding citizen who certainly would not have purchased his property had he anticipated the action of not the zoning authorities that turned it down, but the courts that overruled them, or by the interpretation this court would place on the word "school," in the common connotation.

It seems to me that this is no "school" in its commonly employed sense, but a "correctional institution for actual or potential criminals," who, even if rehabilitated, will be replaced by the same type of actual or potential criminals, ad infinitum. One wonders how the members of this court would react by way of fear for themselves or their children, if the institution, subject of this litigation, were established near *their* homes, or what kind of equitable reaction they would enjoy, if by such establishment, of such institution, where the main opinion concedes there is the use of chains, shackles and maximum security measures by isolation in locked rooms to restrain these unfortunate but nonetheless dangerous misfits,—where the net result obviously would be to depreciate the value of such homes to a figure much less than previous sales value, and possibly to utter worthlessness to such members.

I am of the opinion that the revocation of the plaintiffs' permit by the Planning Board, better equipped than the District, or this Court, to determine whether admitted conditions of danger, detention of incorrigibles, the use of chains and locked rooms therefor, is a "school" in the commonly accepted meaning thereof,—particularly when such conditions and facts do not relate at all to a "school," but perfectly describe and justify need for a "jail" instead.

10. Cf. Anderson, American Law of Zoning, Vol. 2, p. 130.

1. Crist v. Mapleton City, 28 Utah 2d 7, 497 P.2d 633.

Everyone concedes that one of the state prison's primary purposes is to rehabilitate, but I would venture the speculation that not even the wildest of social softies would dub that institution a "school." The main opinion's logic and conclusion would seem to justify the removal of the Utah State Prison from the Point of the Mountain to Penrose Drive or in between the Governor's Mansion and the nearby church house.

I am of the opinion this case should be reversed with instructions to re-instate the Planning Board's rejection of the permit.