703 P.2d 1252

VISIONQUEST NATIONAL, LTD., an Arizona corporation, and Robert Ledger Burton and Claire B. Burton, husband and wife, Plaintiffs/Appellees,

v.

PIMA COUNTY BOARD OF ADJUSTMENT DISTRICT NO. 1; and Karen Aristizabal, Herbert Blank, Lionel Waxman, William Winemiller, and Charlie Brown, solely in their representative capacities, Defendants/Appellants.

No. 2 CA–CIV 5346.

Court of Appeals of Arizona, Division 2, Department A.

June 12, 1985.

Linden, Chapa & Fields by Edward A. Linden, Mark M. Contento, Tucson, for plaintiffs/appellees.

Stephen D. Neely, Pima Co. Atty. by Frank J. Cassidy, Tucson, for defendants/appellants.

## OPINION

FERNANDEZ, Judge.

Appellants, Pima County Board of Adjustment District No. 1 and the individual board members (hereinafter Board) seek to reverse a judgment reinstating a use permit issued by the zoning inspector. The board had determined that appellee's facility was not a private school and had found the permit issuance to be improper. We affirm the trial court and agree that the facility is a private school within the meaning of the Pima County Zoning Ordinance.

In late 1983 appellee VisionQuest applied to the zoning inspector for a use permit for its Pima County Learning Center on River Road north of Tucson. The area is zoned SR or suburban ranch. The use permit was issued March 21, 1984. On July 25 the Rillito-River Road Association appealed the issuance of the permit and the Board reversed the zoning inspector after a hearing. VisionQuest then filed suit to enjoin enforcement of the decision and sought a preliminary injunction. Since the injunction hearing was consolidated with the trial de novo on the merits pursuant to A.R.S. § 11–807(D), a judgment in favor of VisionQuest was rendered. The board appeals from that judgment.

We are asked to determine whether or not VisionQuest's facility constitutes a private school under § 601–k of the Pima County Zoning Ordinance. The permitted uses in an SR zone are the following: one-family dwellings; commercial agricultural uses such as field crops, truck and flower gardening, tree crops, and the raising of livestock and small animals; guest ranches; public parks; public or parochial schools; churches; farm product stands; small airstrips; commercial riding stables or riding schools; hospitals, clinics, dispensaries or sanatoriums; private athletic and sports clubs; racetracks and sports stadiums; resort hotels; veterinary hospitals or commercial kennels; and community stables. Section 601, Pima County Zoning Ordinance. Most of the permitted uses have restrictions as to size, parking facilities and the like, and some require permission of a percentage of property owners within a certain distance of the subject property. Section 601–k, the subsection that is pertinent to this case, reads as follows:

"College, community service agency, governmental structure, library, muse-

um, playground or athletic field, *private school*, provided that said use shall be located on a site of not less than 10 acres, that the improvements shall occupy not more than 30% of said site, that no playground or athletic field be located closer than 100 feet to any property line, and that all roads and parking area be surfaced with a material which will minimize the creation of dust...." (Emphasis added.)

The SR zone is the most restrictive of the county zones. § 2401, Pima County Zoning Ordinance.

A co-founder of VisionQuest testified that the program was begun in 1973 as an alternative to children's corrections institutions. He testified that a child who is placed in the program first spends six to nine months in wilderness experiences which are known as impact programs. When it is determined they are ready for it, they are then placed in a residential center with no more than six other children. After a child moves to a residential center he may then attend the Learning Center during the day, five days a week. Some of the children in the residential centers attend public schools.

The children are at the Learning Center from 8:30 or 9:00 a.m. to between 3:30 and 5:00 p.m. According to the Academic Curriculum Guide which was introduced at trial, classes are conducted from 8:30 to 1:15 and physical education is from 1:30 to 2:30. After classes, there are sports activities and maintenance projects. The center is a member of the Independent League and participates in inter-scholastic events with other private schools in the area. The children return to their respective residential centers in the afternoon, and they must spend at least one hour each evening doing homework. The curriculum guide lists classes at different levels in mathematics, English, science and social studies. The students also take one elective, such as performing arts, home economics, horsemanship and Red Cross first aid. The two

teachers (there were 14 children at the center at the time of trial) are certified by the Arizona Department of Education to teach emotionally handicapped children.

Nearly all the children at VisionQuest have been placed there by court order. They are either juvenile offenders or status offenders, and most have been diagnosed as seriously emotionally handicapped or suffer from a conduct disorder. Most have had disruptive family lives, and a number of them have drug or alcohol problems. Most spend a minimum of a year in placement with VisionQuest.

The center is on the approved list of private special education schools of the Arizona Department of Education, and VisionQuest is a member of the Arizona Association of Private Schools for Exceptional Children. It maintains a relationship with the Tucson Unified School District such that TUSD awards eighth grade certificates to VisionQuest students who meet its requirements, and credits earned at the center will transfer if a student enters a TUSD school. Some of the children at the Learning Center later return to public schools.

The zoning ordinance itself contains no definition of either "school" or "private school". Section 301–b of the Pima County Zoning Ordinance requires undefined terms to be "interpreted according to their common, plain, natural and accepted usage." The Board contends that a review of the entire ordinance indicates a private school is "an alternative to a public school, with all the characteristics of a public school." It would restrict the definition to an institution that educates children able to benefit from education in a traditional classroom setting. The Board would permit special services to be made available for those with special needs so long as those needs do not interfere with the student's ability to cope with a traditional classroom setting. It insists the facility is a detention center rather than a school. We find no evidence to support such a restrictive definition of the term.

The Board also points to § 301–f of the Zoning Ordinance which prohibits issuance of a permit which would or might reasonably tend to destroy established economic or social uses of surrounding properties. It contends that the other permitted uses of an SR zone support its assertion that the court's ruling was in error. There was, however, no evidence on the economic or social uses of the surrounding property to support that contention.

The evidence supports the trial court's finding that the facility is a school according to the common usage of that term. The students are transported to the school in the morning and transported home at night. While they are there, they attend classes in common junior high and high school subjects and participate in after-school athletic events. The credits they earn there apply toward an eighth grade certificate and will transfer to a public school if they later attend one in the Tucson Unified School District. Those characteristics are ones commonly understood to apply to a school. It appears that the primary function of the Learning Center is to educate children.

Such a finding is also consistent with the other uses permitted in a suburban ranch zone. Although the zone is the most restrictive of the county zones, it is by no means restricted to purely residential uses. A number of other activities are also permitted in an SR zone as is indicated by the above-listed summary.

Although most of the children who attend are placed there by court order they are not in a corrections institution. There are no physical barriers around the site, no locked gates or high fences with concertina wire and such. The students are not free to leave during the day, but that is frequently also true of public schools.

The trial court found that the facility was a private school under the definition of former A.R.S. § 15–101(11) which is now found in § 15–101(13). The definition states that " '[p]rivate school' means a non-public institution where instruction is imparted." The Board contends that definition is inapplicable to zoning since the education laws are totally unrelated to land use. Although the statutes obviously were not enacted to determine questions of zoning, we do find it of significance that the Learning Center is considered to be a school by such entities as the Arizona Department of Education and the Tucson Unified School District.

We also note that similar institutions have been determined to be schools for purposes of zoning in other jurisdictions. In *Wiltwyck School for Boys, Inc. v. Hill,* 11 N.Y.2d 182, 227 N.Y.S.2d 655, 182 N.E.2d 268 (1962), a residential school that had dependent, delinquent and emotionally disturbed children was granted a permit to build dormitories since it was held to be a school. The situation there was somewhat different than here since the New York City school system provided part of the teaching staff of the facility. The case of *Crist v. Bishop,* 520 P.2d 196 (Utah 1974), however, is more persuasive. The court there held that the facility (which was residential as well) constituted a school. It stated that "[t]he requisites of such a school are: some physical facility, teachers, a curriculum for study or training, and students who are the objective thereof." 520 P.2d at 198–199. There is no indication in the Pima County Zoning Ordinance that the term "private school" is intended to mean anything more restrictive than that.

Finally, the Board complains that considering the facility to be a school renders meaningless the term "special group foster home" which is another use permitted in an SR zone. § 2431, Pima County Zoning Ordinance. That term is defined as

"[a] licensed home suitable for accommodating more than five, but no more than six persons who require special care for physical, mental, or emotional reasons, or who have been adjudicated to be delinquent." § 432.02, Pima County Zoning Ordinance.

That argument, however, is not persuasive. The testimony clearly showed that the Pima County Learning Center is utilized by the students during daylight hours only and for learning and athletic activities. The children do not stay the night but are transported to their respective residential centers in the evenings. They are also not there on weekends. Thus, there was no indication whatever that the facility is any type of "home". It bears no relationship to a special group foster home as defined in the Zoning Ordinance.

Having determined that the evidence supports the trial court's finding that the Pima County Learning Center constitutes a private school within the meaning of the Pima County Zoning Ordinance, we affirm the judgment in favor of VisionQuest.

BIRDSALL, P.J., and HOWARD, J., concur.